UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CARY BONNECAZE, JIM RUNDELL AND**       **CIVIL ACTION**
**SHARON RUNDELL, AS HEIRS OF THE**
**ESTATE OF JOEL RUNDELL**

**VERSUS**                          **NO:   14-1774**

**EZRA & SONS, LLC, KEVIN GRIFFIN, AND**    **SECTION: "B" (4)**
**TOM DRUMMOND**

<u>**ORDER**</u>

Before the Court is a **Motion to Quash (R. Doc. 47)**, filed by Defendants and Plaintiffs-in-Intervention, seeking an Order to prohibit Plaintiffs from using documents that they argue are privileged but were inadvertently produced by Defendants' former band manager during his deposition. The motion is opposed. R. Doc. 49.

Also before the Court is a **Motion to Quash Notice of Deposition and Subpoena to Produce Documents (R. Doc. 55)**, filed by Plaintiffs, seeking an Order to quash a notice of deposition and a subpoena to produce documents issued to their counsel of record. R. Doc. 55, p. 1. The motion is opposed. R. Doc. 63. The motions were heard by oral argument on March 16, 2016.

**I.**    <u>**Background**</u>

Cary Bonnecaze, Jim Rundell and Sharon Rundell, as heirs on the behalf of Joel Rundell, (collectively, "Bonnecaze") filed this action against Ezra & Sons, LLC, Kevin Griffin, and Tom Drummond (collectively "Ezra & Sons") on August 1, 2014. As bandmates, Griffin, Bonnecaze, Drummond and Rundell performed as the group "Better than Ezra" and released their first album *Surprise* in early 1990. R. Doc. 1, p. 2. Rundell passed away on August 8, 1990. *Id.* at 3. The other members of the band continued to perform and released their second album, *Deluxe*, in 1994. *Id.* However, in February 1995, Bonnecaze disassociated himself from the band and his former band

members sued him for breach of contract. Bonnecaze claims that he received ownership of the *Surprise* master as a part of the settlement agreement in that litigation. *Id.* at 4.

Bonnecaze alleges that 2014 marked the 25th anniversary of the release of *Surprise*. In anticipation of the anniversary, Bonnecaze contacted representatives of his former bandmates, Griffin and Drummond, and advised that he intended to re-release the album to which Bonnecaze claims that they did not object. Bonnecaze states that the re-release is the same as the original and that it has not been re-mixed or re-arranged. *Id.* at 6.

More than a year later, Bonnecaze alleges that Griffin and Drummond's representatives sent him a letter to cease and desist the re-release because it constituted a violation of a trademark owned by Better than Ezra ("BTE"). Griffin and Drummond also lodged a complaint with Facebook, which resulted in the removal of all album promotion on Facebook, and threatened to contact iTunes to remove the album from its catalog. *Id.* at 8.

Bonnecaze now seeks a declaratory judgment of non-infringement and also asserts a trademark infringement claim against Ezra & Sons. *Id.* at 9. Ezra & Sons also asserts a counterclaim against Bonnecaze for trademark infringement and false representation. *See* R. Doc. 9.[1] Having outlined the factual background, the Court will now turn to the instant motions.

First, as to Ezra & Sons' motion to quash, on January 18, 2016, Bonnecaze deposed Adam Harrison, who is the band's former manager. R. Doc. 47-3, p. 1. During the deposition, Harrison produced a number of emails pursuant to a subpoena *duces tecum*. Ezra & Sons objected and claimed that: (1) the emails are subject to attorney-client privilege because they were between

---

[1] In particular, Ezra & Sons claims that they are currently are the owners of the trademark "Better than Ezra." R. Doc. 9. Further, they claim that Bonnecaze is misrepresenting that 2014 is the 25th anniversary of the release of the album *Surprise* to cause confusion in the marketplace. *Id.* at 10.

Defendants and their counsel, and (2) any third-party disclosure was inadvertent. *Id.* at 2. Ezra & Sons seeks to prevent Bonnecaze from using the emails during litigation. *Id. at* 3.

In opposition, Bonnecaze argues that Ezra & Sons waived attorney-client privilege by including a third party (the band's manger) on their communication. Ezra & Sons also contends that the manager's inclusion on the email was not to assist counsel in rendering legal advice. R. Doc. 49, p. 3.

Second, Bonnecaze's motion seeks to quash the notice of deposition and subpoena to produce documents issued to their counsel of record, Roy Maughan. Bonnecaze argues that the notice of deposition and the subpoena are improper on both procedural and substantive grounds because: (1) they were served improperly on a counsel of record, (2) they seek testimony and documents that are protected by attorney-client privilege, and (3) they were served by first class mail as opposed to personal service. R. Doc. 55- 1, p. 4.

In response, Ezra & Sons argues that Maughan is a necessary fact witness because he has information on the business strategy of the re-release because he paid upfront costs for the album and will recover his portion if a judgement is entered in Plaintiffs' favor.  R. Doc. 63-1, p. 1.  The motions and the applicable law will be addressed in-turn below.

## II.     <u>**Motion to Quash (R. Doc. 47)**</u>

Ezra & Sons contends that it was necessary to copy Harrison, the band's former manager, on numerous emails between counsel and themselves to keep him informed on the workings of the band. R. Doc. 47-3, p. 1. Further, Harrison being included on the emails does not constitute a waiver of privilege. R. Doc. 47-3, p. 1.  Ezra & Sons requests that the Court prevent Plaintiffs from using the communication during litigation. *Id.* at 3. Ezra & Sons argues that applying *Upjohn v. Co. v. United States*, 449 U.S. 383 (1981) disclosure to the band's manager, who it argues is more

3

akin to the "President of the band's company" or an executive officer did not waive privilege. R. Doc. 53-2, p. 1.

In opposition, Bonnecaze contends that including Harrison on the emails constitutes a waiver of privilege because he is a third party and was not included to render legal advice. R. Doc. 49, p. 1. Bonnecaze cites a case from the First Circuit, *Cavollaro v. United States*, 284 F. 3d 239, 248 (1st Cir. 2002), to stand for the proposition that disclosure to a third-party waives privilege unless the communication was "indispensable . . . in facilitating the attorney-client communications." *Id.* at 2. Finally, Bonnecaze argues that in addition to Harrison, Michael Bergeron, Defendants' CPA, was included on emails which further constitutes a waiver of privilege. *Id.* at 3.

In cases where a federal question exists, as here, federal common law of attorney-client privilege applies. *Caver v. City of Trenton,* 192 F.R.D. 154, 159–60 (D.N.J. 2000); *Smith v. Smith*, 154 F.R.D. 661, 671 (N.D.Tex. 1994). Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999). Additionally, a client's disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents. *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir. 1982).

Regarding *Upjohn*, there the Supreme Court held that the communication between Upjohn's corporate counsel and its employees were privileged. In *Upjohn,* the IRS summoned the files of a corporate, general counsel regarding the counsel's investigation of illegal foreign payments made by the corporation. The Court held that the purpose of attorney-client privilege is to promote the flow of information to the attorney to enable him to give informed legal advice. Thus, communications from lower echelon employees were protected by attorney-privilege as long

4

as the communications were made to the attorney to assist him in giving legal advice to the client corporation. *Upjohn Co. v. United States*, 449 U.S. 383 (1981) (emphasis added).

In reaching its conclusion, the Court noted that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." The Court reasoned that the extension of the privilege beyond the controlling officers ("the control group") was necessary to preserve a corporate attorney's ability to gather the information necessary to represent the corporation. *United States v. El Paso Co.*, 682 F.2d 530, 538 n. 8 (5th Cir. 1982) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 391–92 (1981)); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).

*Upjohn* is inapplicable to the facts at-hand. Ezra & Sons claims that Harrison ran day-to-day operations of the company and was essentially the company's "President." Counsels confirmed during the hearing that Harrison was employed by a third party and was contracted to be the band's manager. In addition, in examining the documents provided, the email address that Harrison used was ash@camanagement.com. The Court's research reveals that the domain name "camanagement.com" is related to Career Artist Management, a company based in Beverly Hills, CA. Thus, the email communications were between named parties and their counsel and were sent to a third party, the manager, which constitutes a waiver of attorney-client privilege.

### III.  <u>Motion to Quash Notice of Deposition and Subpoena to Produce Documents (R. Doc. 55)</u>

Bonnecaze filed a motion to quash a notice of deposition and subpoena to produce documents issued to their counsel of record. R. Doc. 55. It argues that the notice to appear should be quashed because: (1) the attorney is not a party in the litigation, (2) a formal deposition subpoena was never issued, (3) his testimony would be protected by attorney-client privilege, (4) Maughan has already answered questions through written discovery, and (5) the information

sought can be obtained through other sources. *Id.* at 4. Further, Plaintiffs argue that the subpoena to produce documents should be quashed on procedural ground because it was mailed to the attorney instead of being served personally. *Id.* at 2.

In opposition, Defendants argues that the attorney is a necessary fact witness because he paid upfront costs for the preparation of the re-release and is set to recover costs if judgment is entered in Plaintiffs' favor. R. Doc. 63-1, p. 1. Defendants also argue that any procedural errors are negligible because Maughan has established that he received the subpoena. *Id.* at 2.

Federal Rule of Civil Procedure ("FRCP") 45 governs the issuance of subpoenas to obtain discovery from non-parties. Fed.R.Civ.P. 45(b)(1). FRPC 45 provides that "[a]ny person who is at least 18 years old and not a party may serve a subpoena. Serving a subpoena requires delivering a copy to the named person . . ." *Id*. at 45(b)(1). The Fifth Circuit has held that personal service of a subpoena is required. *See In re Dennis*, 330 F.3d 696, 704 (5th Cir. 2003) ("[T]he rule indicates that proper service requires . . . personal delivery of the subpoena, but also tendering of the witness fee and a reasonable mileage allowance."). *See also Weiss v. Allstate Ins. Co.*, 512 F.Supp.2d 463, 466 (E.D.La. 2007) ("[S]ervice is improper if the person himself is not served with a copy of the subpoena"); *Omikoshi Japanese Restaurant v. Scottsdale Ins. Co.,* 2008 WL 4829583, *1 (E.D.La. 2008) (finding that service of subpoena for records propounded on a non-party was improper where, inter alia, subpoena was sent by certified mail and not personally served).

Defendants served the subpoena by electronic mail and U.S. Postal Service first class mail. As stated above, the Fifth Circuit has interpreted Rule 45's requirement of service to be personal, therefore service by email or certified mail is invalid. *See* R. Doc. 55-3, p. 3; *see also Omikoshi*, 2008 WL 4829583, at * 1. As such, the Court finds that Defendants failed to satisfy Rule 45(b)'s personal service requirement.

**IV.**    <u>**Conclusion**</u>

Accordingly,

**IT IS ORDERED** that the Defendants' **Motion to Quash (R. Doc. 47)** is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' **Motion to Quash Notice of Deposition and Subpoena to Produce Documents (R. Doc. 55)** is **GRANTED**.

New Orleans, Louisiana, this <u>30th</u> day of March 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**